KAREN R. BAKER, Justice, dissenting. I dissent from the majority opinion because Nelson’s petition for writ of error coram nobis should be reversed and remanded for a hearing. IvNelson’s guilty plea to first-degree murder and sentence to life imprisonment stem from the February 5, 1972 death of Raymond Tuck. Nelson and three other men, Robert Hill, Jr., Clarence Perry, and Chester Perry, were involved in a fight with Tuck, used their fists to beat Tuck, and then beat Tuck with a fence board. Tuck died as a result of his injuries. Hill, Clarence Perry, and Chester Perry each pleaded guilty to accessory to murder and each was sentenced to a term of ten years’ imprisonment. Each also agreed to testify against Nelson. At the time of Nelson’s plea agreement, Nelson had retained and was represented by Attorney Gene Worsham. After Nelson retained Worsham, Worsham accepted an appointment from the circuit court to represent Nelson’s codefendant, Hill. Nelson contends that Worsham secured a 10-year plea agreement for Hill in exchange for Hill’s agreement to testify against Nelson at trial. Nelson alleges that Hill advised Worsham that Nelson was the principal actor in Tuck’s murder. Nelson, on the other hand, advised Worsham that Hill was the principal actor in Tuck’s murder. Based on this conflict, Nelson contends that Worsham misrepresented Nelson’s sentence and parole eligibility to him, and coerced Nelson to enter into his plea agreement by asserting that Nelson would be given the death penalty at trial based on Hill’s testimony. Nelson asserts, however, that at the time of his plea, Nelson was not privy to Worsham’s representation of Hill. Nelson further asserts that Hill worked as a carpenter for Worsham for several years, and Hill’s father also worked for Worsham at the time the two men entered into their respective plea agreements. The majority affirms the circuit court’s holding that Nelson’s claim is not a cognizable Isdaim for a writ of error coram nobis. The majority characterizes Nelson’s assertion of coercion as a simple claim of conflict of interest and a classic claim of ineffective assistance of counsel. However, Nelson’s allegations are much more serious than recognized by the majority. Nelson’s allegation of a coerced guilty plea hinges on Nelson’s reliance on his own counsel’s advice, when the purpose of that advice was to assist a codefendant also represented by Worsham, while obliging Nelson to plead guilty, all to Nelson’s detriment. These circumstances may well evidence Nelson was under duress when he pleaded guilty. In Holloway v. Arkansas, 435 U.S. 475, 489-90, 98 S.Ct. 1173, 55 L.Ed.2d 426 (1978), the United States Supreme Court addressed dual representation and explained that [j]oint representation of conflicting interests is suspect because of what it tends to prevent the attorney from doing. ... Generally speaking, a conflict may also prevent an attorney from challenging the admission of evidence prejudicial to one client but perhaps favorable to another, or from arguing at the sentencing hearing the relative involvement and culpability of his clients in order to minimize the culpability of one by emphasizing that of another. Examples can be readily multiplied. The mere physical presence of an attorney does not fulfill the Sixth Amendment guarantee when the advocate’s conflicting obligations have effectively sealed his lips on crucial matters. Further, “counsel’s allegiance to a client must remain unaffected by competing obligations to other clients, and an actual conflict of interest renders judicial proceedings fundamentally unfair. United States v. Alvarez, 580 F.2d 1251 (5th Cir.1978). A conflict occurs, whenever one defendant stands to gain significantly by counsel adducing probative evidence or advancing plausible arguments that are damaging to the cause of a codefendant whom counsel is also representing. Foxworth v. Wainwright, 516 F.2d 1072, 1076 (5th Cir.1975).” Barclay v. Wainwright, 444 So.2d 956, 958 (Fla.1984). The majority states, citing Wright v, State, 2014 Ark. 25, 2014 WL 260993, that “Nelson’s petition reveals |9no claim that he is ‘innocent or that his plea was coerced in the sense that it was the result of fear, duress, or threats of mob violence as previously recognized by the court as cognizable in coram nobis relief ” thereby removing Nelson’s claim from this court’s interpretation of a cognizable coerced guilty plea. Although the majority cites to Wright, Wright did not allege that his plea was the product of fear, duress, or mob violence. Wright in turn cites to Hardwick v. State, 220 Ark. 464, 248 S.W.2d 377 (1952), where Hardwick alleged intimidation and coercion; however, we remanded that case on different grounds. Hardwick cites to State v. Hudspeth, 191 Ark. 963, 88 S.W.2d 858 (1935), where we denied Hudspeth relief because his claims of duress and mob violence were known to him at the time he entered his guilty plea. We stated, “If one is caused to enter a plea of guilty in a criminal case from fear or duress, he is entitled to the writ.... If mob violence had had anything to do with [Hudspeth] entering the plea of guilty, he should have made that plea at the time he asked the court to permit him to withdraw his plea of guilty.” Hudspeth, 191 Ark. at 969-70, 88 S.W.2d at 861. These cases, however, indicate that a coerced guilty plea is one given under duress. In applying our case law here, Nelson has alleged a conflict of interest that was unknown to him when he pleaded guilty; a conflict that significantly benefited his co-defendant and coerced Nelson to plead guilty to his detriment. At a minimum, Nelson’s petition commands a hearing and cannot be denied based on the record before the court. We have explained that “a hearing is not required if the petition clearly has no merit ... in that it fails to state a cause of action to support issuance of the writ.” Deaton v. State, 373 Ark. 605, 608, 285 S.W.3d 611, 614 (2008). However, here, upon review of the record, the record alone, without a hearing, does not support the dismissal of Nelson’s petition for writ of error coram nobis. It cannot be said without an evidentiary hearing that the allegations of Nelson’s coerced guilty-plea argument are without merit. See Buckley v. State, 2010 Ark. 154, 2010 WL 1255763 (per curiam). Therefore, I would remand Nelson’s petition to the circuit court so that it may conduct an evidentiary hearing, consider Nelson’s petition for writ of error coram nobis, and issue an order containing its findings of fact and conclusions of law. HART and HOOFMAN, JJ., join in this dissent.